IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FRANK HARRIS,                          )
                                        )
      Plaintiff,                   )
                                        )
v.                                    )     Case No. 3:09-0650
                                        )     Judge Trauger
LLOYDS TSB BANK PLC,         )
                                        )
      Defendant.            )
                                        )

## MEMORANDUM

Pending before the court is a Motion to Dismiss filed by defendant Lloyds TSB Bank

PLC ("Lloyds") (Docket No. 6), the plaintiff Frank Harris's Motion to Transfer Venue [with

supplements] (Docket Nos. 9, 16, 20) and Harris's Motion for Leave of Court to Conduct

Limited Discovery on Issue of Personal Jurisdiction (Docket No. 21).   For the reasons discussed

herein, Lloyds's motion will be granted, Harris's motions will be denied, and this case will be

dismissed without prejudice.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This suit is the latest chapter in a protracted litigation between these parties.  The

plaintiff's claims against Lloyds arise from contributions that the plaintiff made into a ponzi

scheme in late 1999; the perpetrators of the scheme were customers of Lloyds.  *See Harris v.*

*Lloyds*, 281 Fed. Appx. 489, 489-91 (6th Cir. 2008).  The details of the plaintiff's allegations

were exhaustively discussed in the Sixth Circuit opinion noted above and, for reasons that are

1

made clear below, it is not necessary for present purposes to discuss the details of those allegations here.

On June 3, 2004, the plaintiff filed his Complaint against Lloyds in the Middle District of Tennessee, with Judge Echols presiding. (*See* Case No. 3:04-00486, Docket No. 1.) ("*Harris I*"). The plaintiff's claims were based in common law, and subject matter jurisdiction was premised on the diversity of the parties – the plaintiff is a resident of Tennessee and Lloyds is a foreign corporation based in London, England. (Case No. 3:04-00486, Docket No. 241.) On July 12, 2004, Lloyds filed a motion to dismiss for lack of personal jurisdiction. (Case No. 3:04-00486, Docket No. 8.)

The court permitted discovery on the jurisdictional issue before denying Lloyds's motion on March 10, 2005. (*See* Case No. 3:04-00486, Docket Nos. 69 and 96.) While personal jurisdiction can be proper on either a "specific" or a "general" theory of jurisdiction, the district court found that personal jurisdiction over Lloyds was appropriate on both theories, finding, on a general level, that Lloyds had "continuous and systematic" contacts with Tennessee and finding, on a specific level, that Lloyds had "purposefully availed" itself of doing business in Tennessee and that the claims in the case arose from Lloyds's contacts with Tennessee. *Harris*, 281 Fed. Appx. at 492-96. The district court also denied Lloyds's motion for interlocutory appeal on the personal jurisdiction issue. (Case No. 3:04-00486, Docket No. 107.)

After discovery and motion practice took place in *Harris I*, the district court granted Lloyds's Motion for Summary Judgment on the merits and dismissed the litigation with prejudice. (Case No. 3:04-00486, Docket No. 279.)

2

The plaintiff appealed the district court's granting of Lloyd's motion for summary judgment, and Lloyds appealed the district court's previous denial of its motion to dismiss for lack of personal jurisdiction. The Sixth Circuit only reached the jurisdictional issue, finding that the district court had erred in concluding that Lloyds was subject to personal jurisdiction in Tennessee.

In reaching this conclusion, the Sixth Circuit considered the points relied on by the district court in finding that there was general personal jurisdiction over Lloyds in Tennessee, including that "(1) Lloyds had 108 customers with Tennessee addresses between 1964 and 2002; (2) Lloyds had a correspondent relationship with AmSouth Bank of Tennessee ..." and that Lloyds's representatives visited Tennessee businesses and banks from time to time in the course of Lloyds's massive business enterprise. *Harris*, 281 Fed. Appx. at 493. The Sixth Circuit concluded that the "foregoing contacts amount to nothing more than random, fortuitous, and attenuated contacts that fail to establish that Lloyds purposefully directed its conduct at Tennessee" and, therefore, the finding of general personal jurisdiction was improper. *Id.* at 494. The court went on to hold that the finding of "specific" personal jurisdiction over Lloyds was also improper, as, among other things, there was insufficient evidence that Lloyds took any actions related to this case in Tennessee. *Id.* at 495.

On July 31, 2008, on remand and consistent with the mandate from the Sixth Circuit, Judge Echols dismissed *Harris I*, without prejudice, for lack of personal jurisdiction. (Case No. 3:04-00486, Docket No. 290.) As defense counsel argued in a recent hearing before this court, the Sixth Circuit presumably directed that *Harris I* be dismissed without prejudice to permit

3

Harris to re-file in a forum in which there was personal jurisdiction over Lloyds. (See Docket No. 25 Ex. 1 at 22.) Harris did not appeal the Sixth Circuit's ruling.

Rather, on June 16, 2009, the plaintiff re-filed his Complaint – this time in Tennessee's Davidson County Circuit Court. (Docket No. 1 Ex. B.) ("*Harris II*"). The parties do not dispute that, in all substance, the plaintiff's allegations and causes of action in *Harris I* and *Harris II* are the same. The defendant removed *Harris II* to this court on July 16, 2009, and, shortly thereafter, the defendant filed a motion to dismiss for lack of personal jurisdiction, arguing that, among other things, the Sixth Circuit's conclusion on personal jurisdiction in this matter compels dismissal. (*See* Docket No. 6.) The plaintiff has responded by filing a Motion to Transfer Venue (along with two supplements to that motion), which, if granted, would transfer this matter to the Southern District of New York. (Docket No. 9.) Arguably inconsistent with the motion to transfer, the plaintiff has also filed a Motion for Leave to Conduct Limited Discovery on Lloyd's amenability to personal jurisdiction in this court. (Docket No. 21.)

## ANALYSIS

In his second lawsuit on this matter, the plaintiff, Frank Harris, claims that defendant Lloyds breached various common law duties to him in connection with financial transactions that took place about a decade ago. Lloyds contends that, in light of the Sixth Circuit's conclusion in *Harris I* that there was no personal jurisdiction over Lloyds in Tennessee for these claims, this second Tennessee lawsuit is entirely devoid of merit and should be summarily dismissed. In light of these arguments, the plaintiff responds by arguing that dismissal is too harsh and this matter should either be transferred to the Southern District of New York, or the court should permit

4

additional discovery on the jurisdictional issue.

## I.        Personal Jurisdiction Over Lloyds in Tennessee

Lloyd's Motion to Dismiss makes three main arguments.  One, that the Sixth Circuit

decision is "*res judicata* as to the issue of personal jurisdiction," and, therefore, this matter should

be dismissed without an independent examination of the personal jurisdiction issues.  (Docket No.

7 at 6.)  Two, that, even if the Sixth Circuit decision was not preclusive, the record shows that

personal jurisdiction over Lloyds is not proper in Tennessee.  (*Id.* at 7.)  And three, even if

personal jurisdiction were proper in Tennessee, the Complaint should still be dismissed under the

doctrine of *forum non conveniens.*  (*Id.* at 10.)  Because, as discussed below, the first argument is

dispositive, it is not necessary to reach these latter two arguments.

The question raised by this first argument is whether "issue preclusion," also known as

collateral estoppel, bars this litigation.  Issue preclusion "refers to the effect of a judgment in

foreclosing re-litigation of a matter that has been litigated and decided."  *Heyliger v. State Univ.*

*& Community College Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997)(internal quotation

omitted).  When issue preclusion is raised, "a federal court sitting in diversity looks to federal law

on collateral estoppel to determine any preclusive effect of a prior federal judgment in a diversity

action."  *Tri-Med Fin. Co. v. Nat'l Century Fin. Enters., Inc.*, 2000 WL 282445, *10 (6th Cir.

Mar. 6, 2000)(citing *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213-14 (6th Cir.

1996).  The Sixth Circuit has "identified four requirements for the application of collateral

estoppel: (1) the precise issue raised in the present case must have been raised and actually

litigated in the prior proceeding; (2) determination of the issue must have been necessary to the

5

outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* (citing *NAACP v. Detroit Police Officers Association*, 821 F.2d 328, 330 (6th Cir. 1987)).

As to the third requirement, a dismissal of the prior proceeding, with prejudice, is not required for issue preclusion to have effect in a subsequent proceeding. Rather, "all that is necessary" to constitute a "final judgment on the merits" for purposes of issue preclusion is a "'final decision with respect to the issue to be given preclusive effect.'" *See Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2009 WL 56292, *4 (W.D. Mich. Jan. 8, 2009)(quoting *Am. Postal Workers Union v. U.S. Postal Serv.*, 736 F.2d 317, 319 (6th Cir. 1984)). Therefore, a dismissal of a prior proceeding without prejudice will generally preclude re-litigation of issues resolved in that proceeding. *See Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999)("an issue actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties.")

A court's review of the issue of personal jurisdiction can be restricted by the doctrine of issue preclusion. *Id; see also Grudzinski v. Staren*, 87 Fed. Appx. 508, 511 (6th Cir. 2004)(citing with approval the notion that "dismissal for lack of personal jurisdiction prevents relitigation of issues decided by the court in reaching its decision to dismiss"); *Kersh v. Webb Graphics, Inc.*, 1989 WL 84348, *1 (6th Cir. July 31, 1989)("a review of the motion reveals that [the plaintiff] essentially sought to relitigate the district court's rulings regarding the issue of personal jurisdiction. If the plaintiff was dissatisfied with the court's rulings, he should have filed an

6

appeal therefrom. He did not. Consequently, [the plaintiff] is precluded from contesting the original dismissals.") Under the standard addressed above, *Harris II* appears to be a clear case for issue preclusion, as these same parties had discovery on and fully briefed the issue of personal jurisdiction in this precise context before the district and circuit courts, and the Sixth Circuit reached a "final decision with respect to the issue."

Some courts (although none in the Sixth Circuit, at least as far as the parties or the court can locate) have recognized that the issue of personal jurisdiction can be re-ligated under certain, limited circumstances. Indeed, in *Pohlmann,* the Eighth Circuit noted that, because personal jurisdiction is determined at the time that the suit is commenced, "the court's personal jurisdiction is time sensitive in each case." 176 F.3d at 1112. That is, the *Pohlmann* court recognized that "critical jurisdictional facts" could change in the intervening period between the filing of the two lawsuits, and this *could* undermine the defendant's issue preclusion argument, even if considerable jurisdictional discovery was taken in the first litigation. *Id.* at 1113. Other courts have likewise recognized that "changes in intervening facts," such as the defendant's moving into the forum, "can justify a fresh look at an earlier dismissal for lack of personal jurisdiction." *Quest Sports Surfacing, LLC v. 1st Turf, Inc.*, 2008 WL 3853385, *3 (N.D. Ind. Aug. 15, 2008).

That said, in order for issue preclusion to serve its purpose of "prevent[ing] repetitive litigation of the same dispute," the "fresh look" cannot be unlimited or based solely on the plaintiff's desire to take a second chance on the jurisdictional issue. *Id.* Unless the plaintiff can come forth with "some change in the relevant facts," the previous ruling should not be disturbed. *Id.* Another district court has stated that preclusion should be favored in this context unless

7

"subsequent events create a new legal situation," previously undiscoverable material facts have emerged, or "the second complaint alleges a new cause of action that provides a different basis for personal jurisdiction." *See Moscato v. MDM Group, Inc.*, 2008 WL 2971674, *3 (S.D.N.Y. July 31, 2008)(internal quotation omitted). It is also worth noting that one circuit court did not discuss the possibility that "changed circumstances" could upset a settled decision on personal jurisdiction, concluding that, because the issue of the defendant's "amenability to suit" in the forum was "actually litigated" and "essential to the judgment" in the prior suit, the plaintiff could not "now seek to relitigate ... the personal jurisdiction issue." *Deckert v. Wachovia Student Fin. Servs., Inc.*, 963 F.2d 816, 819 (5th Cir. 1992). Rejecting a changed circumstances argument, another district court noted that the plaintiffs could not "eventually obtain personal jurisdiction over [the defendants] that the court did not have originally by continuing to sue them." *Clark v. Meijer, Inc.*, 376 F. Supp.2d 1077, 1085-86 (D.N.M. 2004).

Plainly, there is some tension between the goals of the issue preclusion doctrine and the fact that personal jurisdiction is usually determined at the time that the suit is commenced. However, as all of the case law above makes clear, when a court dismisses a plaintiff's claim against a defendant for lack of personal jurisdiction in the forum and that plaintiff attempts to assert the same litigation in the same forum, issue preclusion will present a clear, logical bar to the litigation that can be overcome, if at all, only through clear evidence of changed circumstances.

Here, the plaintiff's evidence of changed circumstance is weak. In briefing in support of additional discovery, the plaintiff states that "it is the plaintiff's good faith contention that new

8

facts have arisen which, if established through discovery, would provide sufficient minimum contacts for this court ... to exercise personal jurisdiction over the defendant ... ."  (Docket No. 21 at 4.)  The plaintiff also vaguely refers to "subsequent events and actions on the defendant's part" that have occurred between *Harris I* and *Harris II*, such as the "defendant's continual dealings with customers in Tennessee, as well as its availment of the State [of] Tennessee for the purposes of doing business by use of tools, such as its internet website for example, as well as other Tennessee endeavors (like establishing business contacts with numerous banks for example)." (*Id.* at 4-5.)

Additionally, the plaintiff claims that he has "credible evidence which leads him to believe that the defendant consented to the jurisdiction of federal courts in the United States."  (Docket No. 26 at 1.)  In support of this position, the plaintiff attaches a February 23, 2005 letter that the defendant sent to the Federal Reserve Board of Governors consenting to the jurisdiction of federal courts in actions brought by the United States under U.S. Banking Law.  (Docket No. 26 Ex. 1.) The plaintiff also alludes to an unattached January 2009 deferred prosecution agreement, in which Lloyds apparently consented to the jurisdiction of the District of Columbia district court in another matter.  (Docket No. 26 at 2.)  Lloyds argues that these additional materials have nothing to do with whether there is personal jurisdiction over Lloyds in Tennessee and that the plaintiff has gone "completely off the rails."  (Docket No. 30 at 1.)

The plaintiff's evidence and allegations of changed circumstance is simply insufficient to warrant a "fresh look" at the personal jurisdiction issue.  As to Lloyds's "continual dealings with customers in Tennessee," and Lloyds's "endeavors" and "business contacts" in Tennessee, the

9

Sixth Circuit considered these contacts and concluded that they were insufficient to confer

personal jurisdiction over these claims. *Harris*, 281 Fed. Appx. at 492-96. Moreover, even the

district court, which found that there was personal jurisdiction, concluded that the plaintiff's

arguments regarding Lloyds's website were unhelpful to his personal jurisdiction argument. (See

Case No. 3:04-00486, Docket No. 95 at 10.) The plaintiff provides no reason to believe that

Lloyds's "continual dealings," business relationships or contacts in Tennessee have markedly

increased or that there has been any relevant change in circumstances. Also, the plaintiff's

reliance on his own "good faith contention" and on documents that, frankly, have nothing to do

with whether Lloyds is subject to the jurisdiction of the courts of Tennessee, is plainly

insufficient to justify a "fresh look" at the personal jurisdiction issue.

Therefore, in the absence of sufficient evidence of changed circumstances, the court

concludes that its consideration of personal jurisdiction in this case is precluded by the Sixth

Circuit's resolution of the issue in *Harris I*. Consistent with the Sixth Circuit's ruling, Lloyds is

not subject to personal jurisdiction here, the jurisdictional issue may not be re-litigated and,

therefore, the plaintiff's request for additional discovery on the personal jurisdiction issue will be

denied.[1] The remaining issue is whether this matter should be dismissed, as Lloyds requests, or

whether this matter should be transferred to the Southern District of New York, as the plaintiff

---

[1] A second round of discovery to generally explore whether "critical jurisdictional facts" have changed strikes the court as starkly at odds with the goals of the doctrine of issue preclusion. While the case law on this point is not fully developed, to the court, a change in "critical jurisdictional facts" that would warrant a "fresh look" at the personal jurisdiction issue would be readily perceptible, as in the example cited above, in which the defendant moved into the forum between the filing of the two actions.

10

desires.

## II.      Motion to Transfer

The plaintiff filed his initial motion to transfer this case to the Southern District of New York under 28 U.S.C. § 1404(a), which is the general provision that permits a district court to transfer a case to another district "for the convenience of parties and witnesses."  (Docket No. 9.) However, because the court does not have personal jurisdiction over the defendant, it may not transfer this case pursuant to Section 1404(a).  *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).  In his supplemental motions to transfer venue, the plaintiff has also cited 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631.  (Docket Nos. 16 and 20.)  Section 1406(a) concerns transfer when venue is improper, and, therefore, Section 1406(a) is not the pertinent statute here.

Section 1631, however, is relevant.  It states that, when a district court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer" the case "to any other such court in which the [case] ...  could have been brought at the time it was filed or noticed."  28 U.S.C. § 1631.  The issue, then, is whether transfer of this case is "in the interest of justice."

The plaintiff contends that transfer is warranted because there would be personal jurisdiction over the defendant in New York, as Lloyds "has maintained a physical and business presence in the Southern District of New York on a continuous basis."  (Docket No. 9 at 3.)  The plaintiff contends that this presence would also make evidence more accessible, and, overall, "trying this matter will be much more expeditious and inexpensive [in New York] as compared to the current Tennessee forum."  (*Id.* at 4.)  The plaintiff also notes that Lloyds has been a plaintiff

11

in at least one case in the Southern District of New York before.  (Docket No. 20 at 1.)

In a lengthy response to the plaintiff's motion to transfer, the defendant argues that, even if there would be personal jurisdiction over Lloyds in New York (which the defendant does not concede), New York would be an inconvenient forum for this litigation because, among other things, (1) "none of the non-party witnesses in this case (who all reside in Tennessee, Texas or the United Kingdom) are within the subpoena power of the United States District Court for the Southern District of New York," (2) none of the relevant documents or party witnesses are located in New York, and (3) because both sides would have to obtain New York counsel who would be unfamiliar with this protracted litigation.  (Docket No. 22 at 9-11.)  Lloyds also argues that transfer would not be in the interest of justice because the plaintiff "should not be rewarded" for filing a new round of litigation in an obviously inappropriate forum and because the plaintiff's claims are "indisputably time-barred under New York law" and, therefore, transfer would only "delay the inevitable" dismissal of this case in New York.  (*Id.* at 18-25.)

The Sixth Circuit has recently provided helpful guidance on the factors that the court should consider when assessing whether to transfer or dismiss an action pursuant to Section 1631. *Stanifer v. Brannan*, 564 F.3d 455, 456-57 (6th Cir. 2009).  In *Stanifer*, the court noted that Section 1631 confers "broad discretion" on the district court in deciding whether to transfer or dismiss.  *Id.*  The Sixth Circuit emphasized, however, that the overarching question for the district court in this context should be whether the circumstances justify absolving the plaintiff of his error, that is, his filing of the action in the wrong forum.  *See id.*  Indeed, after canvassing the case law on this issue, the Court concluded that transfer is more likely appropriate where there was an

12

"arguable basis for" the plaintiff to think "that the action was properly brought in the district in which it was originally filed." *Id.* at 460. Dismissal, however, is more likely appropriate where the plaintiff's attorney "reasonably could have foreseen that the forum in which the suit was filed was improper"; in that circumstance, "the interests of justice swing against the plaintiff" for "having engaged in the misuse of the court processes" and for having burdened the system with substantial and unnecessary costs. *Id.* (internal quotation omitted).

Here, the court can identify no reason why the "interests of justice" favor transfer of this case to the Southern District of New York. The plaintiff makes no counter to the defendant's compelling arguments about the inefficiencies and potential fruitlessness of transferring this case. Moreover, as the plaintiff did not come before this court prepared with any new facts or evidence that would justify a departure from the Sixth Circuit ruling, the plaintiff and his attorney certainly should "have foreseen that the forum in which the suit was filed was improper."[2] Additionally, discovery from *Harris I* makes plain that the plaintiff should have recognized, as early as that

_____

[2]The fact that this case was initially re-filed in Tennessee state court is of no moment. The opinion of the Sixth Circuit that there was no personal jurisdiction over Lloyds in Tennessee would be binding on the state court as well. *See Regions Fin. Corp. v. Marsh USA, Inc.*, 2009 WL 400632, *6 (Tenn. Ct. App. Feb. 19, 2009). In his state court complaint, the plaintiff recognized that *Harris I* had been dismissed for lack of personal jurisdiction, but he claimed that he could file the same complaint in state court because of the Tennessee "savings" statute, which states that "notwithstanding any applicable statute of limitation to the contrary, any party filing an action in a federal court that is subsequently dismissed for lack of jurisdiction shall have one (1) year from the date of such dismissal to timely file such action in an appropriate state court." T.C.A. § 28-1-115. This savings statute plainly does not create personal jurisdiction in state court where a federal court has found that none exists; rather, this statute appears to ease the statute of limitations rules to allow the plaintiff an opportunity to re-file in state court after a federal court has dismissed the matter for lack of subject matter jurisdiction. *See Windsor v. Dekalb County Bd. of Education*, 2008 WL 802465, *4 (Tenn. Ct. App. March 25, 2008).

13

previous litigation, that the defendant had a New York office. (Docket No. 23 Ex. 10 at 12.)

Therefore, when preparing to file this second round of litigation, the plaintiff had a controlling opinion from the Sixth Circuit stating that personal jurisdiction was not proper in Tennessee and information suggesting that New York might be a proper forum; yet the plaintiff proceeded to re-file this action in Tennessee state court. In the court's view, this is precisely the type of "misuse of the court processes" that justifies dismissal of the action, rather than transfer. Of course, this dismissal is without prejudice, which provides the plaintiff with the opportunity to re-file this litigation in a viable forum.

**CONCLUSION**

As the defendant is not subject to personal jurisdiction in this case, the defendant's motion to dismiss for lack of personal jurisdiction will be granted, and the plaintiff's assorted motions challenging dismissal will be denied, as the court, in its ample discretion, determines that the circumstances of this case warrant dismissal, without prejudice, of this action, instead of transfer to an arguably viable forum.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

14